### SUPERVISORS OF ONONDAGA *vs.* BRIGGS.

The taxation of a district attorney's account pursuant to regular notice is a judicial act and cannot be questioned in an action against him by the county to recover back moneys received over and above his legal fees. This point decided in 2 *Hill,* 135, *reaffirmed.*

The determination of the board of supervisors in auditing and allowing such an account is conclusive upon the county.

Money voluntarily paid upon a claim of right, where there has been no mistake of any fact, cannot be recovered back. Payments directed by the board of supervisors upon the adjustment of accounts against the county, fall within this principle.

The fact that costs which have been paid had been regularly taxed, is an answer to a prosecution for treble damages upon the statute against extortion, as well as to an action at common law to recover back the money. *Per* BRONSON, C. J.

A district attorney is entitled to be paid for subpœna tickets issued by him. The case of *Supervisors of Sullivan* v. *Dimmick,* (18 *Wend.* 538) *contra,* overruled.

THIS cause was tried a third time at the Onondaga circuit in April, 1845, before WHITING, C. Judge. The plaintiffs again sought to recover the excess of moneys received by the defendant as district attorney of Onondaga, over and above his lawful compensation. It appeared that the defendant had been district attorney of that county for about six years prior to June, 1839, and that his bills had been taxed by a supreme court commissioner, after notice given to the chairman of the board of supervisors, and regularly audited and allowed each year by the board, and that the amount had been paid to him by orders drawn on the county treasurer, and that for the whole time these payments amounted in the aggregate to $7875,39. The defendant insisted that the taxation was conclusive; and also, that the auditing and allowance of the accounts by the board of supervisors was an adjudication which the plaintiffs could not question; and further, that the money having been voluntarily

paid with a full knowledge of all the facts, no action could be maintained to recover it back. On these grounds he moved for a nonsuit, which was refused by the circuit judge, and the defendant excepted. The jury were instructed that a large number of items amounting to $3461,38, and embracing $1658,26, for drawing and engrossing subpœna tickets ought not to have been taxed or allowed, and that the plaintiffs were entitled to recover the amount so improperly allowed with interest. The defendant again excepted. The jury found a verdict for the plaintiffs for $4536,49. The recovery was upon the common counts, the plaintiffs having waived the right to treble damages under the statute. The defendant now moves for a new trial on a bill of exceptions.

*J. J. Briggs in person & J. R. Lawrence,* for the defendant. (1) The taxation was conclusive. ( *Williams* v. *Frith, Doug.* 198; *Hooper* v. *Till, id.* 199 *and note* [1]; *Hallock's Law of Costs,* 507 *to* 509, 504, 513, 610, 625; *Scott* v. *Elmendorf,* 12 *John.* 315; *Lee* v. *Jones,* 2 *Camp.* 496; *Platt* v. *Halen,* 23 *Wend.* 456; *Osboldistone* v. *Cross,* 1 *Comyn's Rep.* 612; *Maugham on Attorneys,* 195-6, 204; *Moody* v. *Thurston, Stra.* 481; *The People* v. *Collins,* 19 *Wend.* 56; *Wood* v. *Peake,* 8 *John.* 69; *Jack* v. *Martin,* 12 *Wend.* 311.)

(2) The auditing and allowance of the accounts by the board of supervisors concludes the plaintiffs. (1 *R. L.* (1801) 461, 463, §§ 1, 3; *Laws* 1818, 306; 1 *R. S.* 383, § 95; 1 *id.* 367, § 2, 4, *sub.* 2; *id.* 385, § 3, *sub.* 2; *id.* 386, § 4; 2 *id.* 753, § 12; *The People* v. *The Supervisors of Dutchess,* 9 *Wend.* 508.)

(3) Money voluntarily paid, where there has been no mistake in matters of fact, cannot be recovered back. (2 *Phil. Ev.* 118; *Clarke* v. *Dutcher,* 9 *Cowen,* 674, 681; *Brisbane* v. *Dacres,* 1 *Taunt.* 144; *Mowatt* v. *Wright,* 1 *Wend.* 355; *Bilbie* v. *Lumley,* 2 *East,* 469; *Gower* v. *Popkin,* 2 *Starkie,* 85; *Clinton* v. *Strong,* 9 *John.* 370; *Jacob's Law Dict. Extortion;* 2 *Burr,* 1012.)

(4) The subpœna tickets were taxable. (*Archb. Cr. Pl.* 110, 157, 158; *Burns' Justice* " *Evidence;*" 2 *Russ. on Crimes,*

638, 9; *Cowp.* 845; 2 *Chit. Cr. L.* 235; 2 *R. S.* 400, § 42; *id.* 751, § 7; *id.* 735, § 14; *id.* 729, §§ 63, 64, 65; *Barbour's Treatise*, 404; *Laws* 1839, 340, 1.)

(5) Interest was not recoverable.

*G. F. Comstock*, for the plaintiffs. (1) A public officer whose compensation is regulated by law is liable in an action for money had and received, for money which he has taken contrary to law on pretence that it was due him for fees. (2 *Chit. Cr. L.* 295; *Lovell* v. *Simpson*, 3 *Esp.* 153; *Miller* v. *Aris. id.* 232; *Marriott* v. *Hampton*, 2 *id.* 547, *note* (1); *The People* v. *Whaley*, 6 *Cowen*, 661; *Stevenson* v. *Mortimer*, *Cowp.* 805; *Moses* v. *McFarlain*, 2 *Burr.* 112; *Hatch* v. *Mann*, 15 *Wend.* 44; 2 *R. S.* 651, 2, §§ 5, 7; *Palmer* v. *Lord*, 6 *John. Ch. R.* 95; *Wheaton* v. *Hibbard*, 20 *John.* 290.)

(2) The taxation is not a judicial decision and is not a bar to the action. (*Case* v. *Reeve*, 14 *John.* 79; *Maybee* v. *Avery*, 18 *id.* 352; *Cowen & Hill's Notes*, 819; *Greenl. Ev.* § 537; *Davis* v. *Wood*, 1 *Wheat.* 6; 1 *Stark. Ev.* 196; *Mercein* v. *The People*, 25 *Wend.* 64—100; *this case in error, Dec.* 1844, *opinions of Lawrence, Porter, Sherman and Putnam, senators.*) At all events it should have been specially pleaded if relied on as an absolute bar. (*Miller* v. *Manice*, 6 *Hill*, 114, *and cases cited by Walworth, chan.*)

(3) The action of the board in auditing the accounts and directing the payment of the money furnishes no defence. (*The People* v. *The Supervisors of Columbia*, 10 *Wend.* 363; *The People* v. *Lawrence*, 6 *Hill*, 244; 2 *R. S.* 751, 2, §§ 8, 9, *and cases supra.*)

(4) The charges for subpœna tickets were illegal. (*Supervisors of Sullivan Co.* v. *Dimmick*, 18 *Wend.* 538.)

*By the Court*, BRONSON, Ch. J. After this case was before us on a former occasion, (2 *Hill*, 135,) there was a second trial, when the plaintiffs were nonsuited. The decision of the circuit judge was reviewed by this court on a bill of exceptions, and confirmed in May term, 1843. A writ of error was then brought,

and our judgment was reversed by the court for the correction of errors in December, 1844. There has since been another trial, and a verdict for the plaintiffs for $4536,49; and the defendant now moves for a new trial on a bill of exceptions. When the case was mentioned at the bar, I hoped and expected to find that the court for the correction of errors had settled some principle which would govern the case; and that we should have nothing to do beyond seeing the principle fairly applied. But I heard, with regret, from the counsel on both sides, that no such principle could be deduced from the decision: and on looking into the reasoning of the four senators who delivered opinions in favor of the reversal, I find that the counsel were not mistaken. This is not the fault of the court, nor of any of its members. It results from the manner in which the court is organized, and its business transacted. From the great number of judges of which the court is constituted, the number of opinions which are sometimes delivered, and the diversity of reasons which they contain; and from the fact that most of the members usually vote for affirmance or reversal without assigning any reason, it must occasionally happen that no one can say what particular question of law was decided. It has so happened in this case. The four senators who delivered opinions for a reversal were not agreed in their reasons; and whether the eleven senators who silently voted with them concurred in any one of the four opinions does not appear. The decision furnishes no guide for the re-trial of the cause, or the judgment which is now to be rendered, beyond the fact that for some reason or other the former judgment of this court was deemed erroneous. That fact alone would afford us some aid on the present occasion, if it were not for the further fact, that a very different case is now presented from the one which was before the court of errors. I will notice some of the leading points in which the two cases differ.

On the former trial the plaintiffs claimed to recover, not only on the common count for money had and received to their use; but also on the counts upon the statute giving treble damages to the party aggrieved. (2 *R. S.* 651, § 7; *p.* 753, § 17.) On

the last trial the plaintiffs waived the claim to treble damages; and the circuit judge decided that they were entitled to recover under the common money count. And I may add, that as to a portion of the recovery, the statute of limitations, which was pleaded, was a bar if the plaintiffs proceeded for the penalty; the limitation in that case being three years; (2 *R. S.* 298, § 31;) while six years must elapse before the common law action is barred. (§ 18.) This is a very important difference between the two cases; for I understand Mr. Senator Porter as proceeding on the ground, that although the taxation may be conclusive in the common law action for money had and received to the plaintiffs' use, it is not conclusive in the statute action for treble damages. How many other members may have acted upon that ground, it is of course impossible to determine; but if each member had assigned the reason for his vote, I think it highly probable that as many would have concurred in that opinion as would have agreed upon any other ground for reversing the judgment. The case now presents no question on the counts for the statute penalty.

Mr. Senator Sherman was of opinion that the taxation was conclusive as to all items which could be allowed in any case under the fee bill for district attorneys; and that it was equally conclusive whether the services were performed or not. But beyond that—when charges were allowed for which the fee bill had not provided—he thought the taxing officer had no jurisdiction, and the taxation was not conclusive. He made no distinction between an action for treble damages, and one upon the common money count. Mr. Senator Putnam was also of opinion that the taxing officer had no jurisdiction as to charges not in the fee bill; and that notwithstanding the taxation, the moneys paid for such charges could be recovered back. In a subsequent part of the opinion I understand him to say, in substance, that such moneys may be recovered back because the taking of them is expressly forbidden by the statute; and this reason he extends to charges for services not performed, as well as charges not within the fee bill. Another senator seemed to regard the taxation as of no consequence whatever; partly be-

cause there were men of "lax morals" among the taxing officers; and partly because to "tolerate and uphold such a system of extortion" as had been practised by the defendant, might "eventually bring down the indignation of an injured public" upon the court.

There is another difference of some consequence between the former and the present case. On the former trial the plaintiffs offered to prove, that the defendant had "charged in his accounts and received several thousand dollars *for services not in fact performed* by him, and for services not provided for by law," &c.: "And that the aforesaid several accounts were taxed *upon false and fraudulent suggestions* contained in the affidavit of the defendant." In another part of the case the offer was to prove "that the taxation of the said accounts was procured by *falsehood and fraud* in the affidavits of the defendant." All of this evidence was rejected, and the plaintiffs were nonsuited. It was this part of the case, I presume, which, more than any other, influenced the senator who spoke of the "indignation of an injured public;" and it may, for aught we can know, have governed the action of other senators. On the last trial it was admitted that all the services charged by the defendant in his accounts, with the exception of a few items, were actually performed. And the only items which were rejected on the ground that the services were not performed amounted to no more than the sum of thirty-seven dollars. This is not a very large sum when we remember that the accounts amount in the aggregate to nearly eight thousand six hundred dollars. And what is quite material, no attempt was made to show either fraud or falsehood in procuring the taxation of the bills.

Another very important difference between the two cases will be found in the fact, that on the former trial the circuit judge decided against the plaintiffs on the sole ground that " the taxation of the accounts was conclusive ;" while on the last trial two other objections were taken by the defendant—first, that the accounts had been audited and allowed by the board of supervisors, which board was fully competent to decide between him and the county ; and second, that the money had been voluntarily

paid by the plaintiffs with a full knowledge of all the facts, and consequently could not be recovered back. Both of these points were ruled against the defendant by the circuit judge. They are grave questions, which have not even been before the court of errors.

The case as it has now been tried, presents no question upon the counts for the statute penalty. The only inquiry is, whether the plaintiffs can recover under the common count for money had and received to their use. There are several reasons why I think they cannot; the first of which is, that the taxation was a judicial determination between the parties, which cannot be attacked in this collateral manner. As the reasons of this court for entertaining that opinion have already been assigned on two occasions, little need be added at this time. Having seen no reason to change that opinion, we shall stand upon it, until the court of review shall decide that we are wrong. Only one member of the court of errors has spoken of the taxation as though it were a matter of no legal importance; and he has proceeded upon grounds which will, I trust, never govern the action of any judicial tribunal. If the taxing officers cannot be trusted, that is a reason for turning them out, and putting better men in their places, or a reason for changing the system. But it is no ground for disregarding their decisions, so long as they remain in force. Neither the error, nor the corruption of the judge will avoid his sentence. It is conclusive until set aside or reversed by a direct judicial proceeding instituted for that purpose. Nor is it any ground for disregarding a judicial determination that one party has got a great deal more than was justly due him. If the error cannot be corrected in a legal manner, it must go without redress. Courts of justice should take care that they are not misled by the hardship of a particular case, or by the passion or prejudice which may be excited against a particular individual, to make a precedent which would run counter to well established principles. It should never be forgotten that a wrongdoer, however great the wrong may be, has not forfeited all his rights. And although the individual may be entitled to no sympathy, care should be taken that the blow which destroys him does not in-

Supervisors of Onondaga *v.* Briggs.

flict a wound upon justice herself. Above all things else, a judge should follow and uphold the law, whatever danger there may be of bringing down popular indignation upon his head ; or however vilely he may be slandered, either before or after he is dead, by an insinuation that he " was characterized for his care of the interests of the profession," rather than a regard to the right of the case. My late lamented associate who delivered the opinion of this court on the two former occasions, had wisdom to discern the right, and courage enough to render the same measure of justice to a brother of the legal profession, that he would award to any other individual. It is only weak and timid judges who do injustice to a friend, or a member of the same society, party, or profession, from the fear of being thought partial.

A good deal has been said to prove that the taxation of a bill of costs is not a technical judgment. The labor was unnecessary ; for no such thing has been pretended. But still it is a judicial act. It is a duty which has been confided to judicial officers to be exercised in a judicial way. The parties and their proofs are to be heard ; and their rights are to be settled by a judicial determination. It is of the same general nature as are the decisions made by a judge or commissioner in proceedings under the insolvent laws, the act to punish fraudulent debtors, between landlord and tenant, and the many other cases which might be enumerated. They are all judicial determinations which are conclusive upon the parties, until they have been reversed, vacated or set aside in the forms prescribed by law. They cannot be attacked in a collateral action, save where the legislature has so expressly provided. This is a principle of universal application. It extends alike to the decisions of the highest court, and the humblest officer in the state who has been entrusted with the exercise of judicial powers. However desirable it may seem in a particular case to disregard the rule, it cannot be broken down without doing a great wrong to the community. When a matter of right between A. and B. has been settled in the form prescribed by law, whatever that form may be, if the determination be not conclusive so long as it remains in force—if either party may at his

pleasure disregard it and litigate the matter over again in a collateral action, we shall have nothing but endless legal strife and controversy. No community could long endure such a state of things as this new doctrine would be likely to bring about. I do not understand that more than one member of the court of errors has expressed an opinion in favor of it; and I do not doubt that upon further reflection he would concur with me, that it is better to bear a particular evil, than to open the door for general mischief.

But it is said that the taxation is not conclusive when the officer allows charges which are not authorized by the fee bill; and the reason assigned is, that when the officer goes beyond the fee bill, he has no jurisdiction. This argument has been put forward by two senators for whose opinions I entertain the highest respect; but still I have been unable to bring my mind to the same conclusion. If the argument be carefully analyzed it will, I think, be found to come to this: when the officer decides right, the decision is conclusive; but when he decides wrong, the decision is good for nothing—he has jurisdiction to decide right; but no jurisdiction to decide wrong. With great respect I must be permitted to say, that this reasoning is utterly fallacious. It would not only overturn the authority of taxing officers, but it would upset the jurisdiction of every other officer and court in the state. Courts are established, and judges and other judicial officers are appointed, for the purpose of administering justice; and it is their duty, so far as they can discover the truth, to decide right. But the power to decide at all, necessarily carries with it the power to decide wrong, as well as right. It is just as true of all our courts, as it is of taxing and other judicial officers, that they have no commission which, in terms, authorizes them to do wrong; but in the present imperfect state of human knowledge, a power to hear and determine, necessarily includes and carries with it a power which makes the judgment or determination obligatory, without any reference to the question whether it was right or wrong. If it were not so, the judgment or determination would be of no

Supervisors of Onondaga *v.* Briggs.

value: any one might resist it at pleasure, under the plea that the court or judge had committed an error.

It is undoubtedly true, that courts and officers of special and limited jurisdiction must keep strictly within the bounds of their authority. And extreme cases have been put, such as a justice of the peace giving judgment in an action of slander, and a taxing officer allowing hack hire and tavern expenses in a bill of costs. Such cases prove very little. They may mislead the ignorant and the thoughtless; and that is about all they are worth. Jurisdiction is expressly denied to a justice of the peace in actions of slander; and when we have a taxation of hackhire and tavern expenses in a bill of costs, it will be time enough to say how far the act of the officer is binding. It is sufficient to say, that no such question, nor any thing approaching it, is presented by this case. The taxing officers allowed nothing where there were not plausible grounds for making the allowance. Each of the accounts was accompanied by an affidavit—the proof prescribed and allowed by law—that all the services therein charged had been actually performed. Now although as to some of the charges there can be no doubt that the taxing officers were wrong, still it was but an error of judgment, and not a defect of jurisdiction. It was an error to be corrected by appeal, after an appeal was given; and before that time, it was to be submitted to as a final determination of the matter. The taxation was not a nullity. Taxing officers have been appointed for the very purpose, among others, of determining whether the charges come within the statute allowing fees. That is part of their jurisdiction. To say that they may decide the question, and yet that the determination is void when they fall into error, is a legal absurdity. In addition to certain specific allowances, the statute gives the district attorney certain sums by the folio "for drawing and engrossing every affidavit and other proceeding actually and necessarily prepared by him in the prosecution of any cause, and for which no fee is specially allowed." (2 *R. S.* 751, § 7.) When charges are made under this clause—and all, or nearly all the disputed items in these accounts were charged under the clause—the questions presented to the taxing

officer are, whether the papers were " *actually* and *necessarily* prepared" by the district attorney. I do not see how it is possible to deny, that both of those questions are referred to the decision of the taxing officer; and if they are, then, beyond all room for controversy, he has jurisdiction. If he allows a charge for drawing or engrossing any paper which was not "actually and necessarily prepared," it is but an error of judgment, and not an excess of authority.

In *The People* v. *Lawrence*, (6 *Hill*, 244,) the board of supervisors allowed the relator a sum of money when he had rendered no service whatever to the county. There was no color for making the allowance; and we held that the board had exceeded its jurisdiction. But it is not so here. The district attorney had rendered services to the county; he had rendered *the very services* for which it is now said he ought not to be paid; and he furnished to the taxing officer the proper proof of that fact. As the papers had been "actually prepared," it only remained to inquire whether they were "necessarily prepared." Clearly that was a question within the jurisdiction of the taxing officer— it was one of the very things which the legislature intended he should decide. He has decided it; and however erroneous the decision may be, there is no principle upon which it can be overruled or disregarded in a collateral action. The remedy was by appeal, after an appeal in these cases was given. Before that time, the decision of the taxing officer was final. But it was none the less conclusive because it was final.

In this connection it may be noticed, that the circuit judge held all the charges in these accounts for *subpœna tickets* illegal; and that item alone, excluding interest, makes very nearly one half of the verdict. It was not denied but that the tickets had actually been made out and issued—indeed, that fact was admitted; but the charges were rejected on the ground that the tickets had not been "necessarily prepared:" and for this decision the circuit judge had the authority of *The Supervisors of Sullivan* v. *Dimmick*, (18 *Wend.* 538,) where I delivered the opinion of the court. Although that decision was made near the beginning of the year 1836, it will be seen from the title

page that the book was not published until 1839, after all the charges in these accounts for tickets had been taxed. It is quite possible, therefore, that the defendant and the taxing officers may have acted very honestly in making and allowing those charges. But whatever may have been their motives, the facts that the services were actually performed, that there was a clause in the fee bill under which they might be allowed, and that there was no published decision, nor even *dictum*, against making the allowance, are sufficient, and much more than sufficient, to show that the officers had authority to determine whether the charges should be allowed or not. When charges are made which fall within the language of the fee bill, as these clearly do, it is then the duty of the taxing officer to ascertain, first, whether the services have been rendered; second, whether they were necessary; and lastly, whether they are charged at the established rates. The officer has just as much authority for deciding the second question, as he has for deciding either of the others; and if he has not a right to decide them all, taxation is no better than a piece of legal nonsense.

Candor requires that I should repeat here, what was remarked to the counsel on the argument, concerning the case of *The Supervisors of Sullivan* v. *Dimmick*. That case came before me at a motion term soon after taking my seat on the bench. On consulting the then chief justice, I learned that it had been recently decided that district attorneys were not entitled to charge for subpœna tickets; though the case had not been reported; and thereupon, after briefly referring to the statute, and without further investigation, the matter was disposed of as a settled question. I have since become entirely satisfied that the decision was erroneous. The mode of compelling the attendance of witnesses by subpœna is the same in all courts of record, whether of civil or criminal jurisdiction. A ticket containing the substance of the subpœna, or a copy of the writ, must be delivered to the witness. All the books which speak of the practice in criminal cases are agreed upon this point. (1 *Chit. Cr. L.* 609, *ed. of* 1819; 2 *id.* 235; 2 *Russ. on Crimes*, 638–9, *ed. of* 1836; *Archb. Crim. Plead.* 148, *ed. of* 1840;

*Roscoe's Crim. Ev.* 88, *ed. of* 1836; *Barb. Crim. L.* 404.)
The legislature has taken the same view of the matter. It is
enacted, that the provisions of law in civil cases, relative to com-
pelling the attendance of witnesses, shall extend to trials on in-
dictment, so far as they may be in their nature applicable. (2
*R. S.* 735, § 14.) This statute was entirely overlooked in de-
ciding the case in the 18th of Wendell. The same legislature
had just before re-enacted the common law in relation to com-
pelling the attendance of witnesses in civil cases, by declaring
that a copy of the writ of subpœna, or a ticket containing its
substance, should be delivered to the witness. (2 *R. S.* 400, §
42.) And the legislature since that time, has impliedly declared
the necessity of a subpœna ticket in criminal cases, by prescrib-
ing the fee which the district attorney shall receive for the sub-
pœna and the ticket. (*Stat. of* 1839, *p.* 341.) As the mistake
which was made in the 18th of Wendell was favorable to the
tax-payers, the acknowledgment of the error will not be likely
to meet with general approval; especially as the acknowledg-
ment is made in favor of a defendant who is justly censurable
for having, in other particulars, charged too much. But I shall
cease to respect myself when I want either the courage or the
candor to confess an error of judgment of which I am thoroughly
convinced.

Enough has, I trust, been said to show, that there is no foun-
dation for the argument that the officer has jurisdiction when
he decides right; but none when he decides wrong. And as
the taxation has not been set aside on appeal, nor by any other
direct proceeding for that purpose, it is conclusive upon the
plaintiffs as well as the defendant; and this action cannot be
maintained.

But suppose I am wrong, and the taxation is not conclusive.
It is then good for nothing, and must be laid out of the case.
The plaintiffs cannot use it for one purpose, while they reject it
for another. How then does the case stand? The fees and
expenses of the district attorney in criminal cases are a charge
upon the county. The defendant presented his accounts from
time to time to the board of supervisors, which board has power

" to examine, settle and allow" all accounts chargeable against the county, and to raise the money to defray the same: and the board from time to time examined, settled, allowed and paid the accounts. (1 *R. S.* 385, §§ 3, 4; *p.* 383, § 95; *p.* 367, § 4; 2 *R. S.* 753, § 12.) These acts conclude the plaintiffs from maintaining this action upon two grounds: first, as adjudications of the matter made by a tribunal duly constituted for that purpose, and having ample authority to decide; and second, as voluntary payments, without fraud, and with full knowledge of the facts. Either ground is a complete answer to an action to recover back the money. It is a monstrous proposition to say, that all the accounts which have been audited and settled by boards of supervisors in this state, can be re-opened and litigated at the pleasure of either party; and if one party can do it, the other can do it also. If the determination does not bind the party which makes it, clearly the other party cannot be bound. But upon the plainest principles, it is conclusive upon both. And then in addition, there was a voluntary payment of the money. There will never be an end of legal strife if an action will now lie to recover it back.

But it is said that this was not a voluntary, but a compulsory payment, because the defendant came with taxed bills, and if the money had not been paid a mandamus would have followed. That argument assumes that the bills had been duly taxed, and that the taxation was conclusive; for if it was not conclusive, a mandamus would not lie to enforce it, and there was consequently no compulsion. The plaintiffs must take this matter either one way or the other. They have no right to call it one thing now, and another thing the next moment, as they find themselves pressed with difficulties. If there was a good taxation, that is an answer to the action: if there was not, then the plaintiffs have themselves audited and settled the accounts and paid the money; and that is an answer to the action: or rather, two answers. Although the defendant may be both a lawyer and a sinner, it will not do to break down well established principles for the sake of punishing him.

It is no answer to the fact of a voluntary payment for the

plaintiffs to say, that they acted under the mistaken supposition that the taxation was conclusive, and consequently that they were obliged to pay. If that was a mistake of any kind, it was not a mistake of a fact, but of the law; and it is fully settled that proof of such a mistake will not enable the party to recover back money which he has voluntarily paid under a claim of right. (*Clarke* v. *Dutcher,* 9 *Cowen,* 674; *Mowatt* v. *Wright,* 1 *Wend.* 355; *Bilbie* v. *Lumley,* 2 *East,* 469; *Brisbane* v. *Dacres,* 5 *Taunt.* 144; *Marriott* v. *Hampton,* 2 *Esp. R.* 546.) It would be easy to multiply authorities; but the principle is too familiar to require it.

The plaintiffs' counsel have referred us to *Lovell* v. *Simpson,* (3 *Esp. R.* 153,) and *Miller* v. *Aris,* (*id. p.* 231,) to show that this money may be recovered back. The first was a case where the money had been extorted from the plaintiff while the defendant had him in custody under a writ. And in the other case the plaintiff was also the defendant's prisoner when the illegal exaction was made, and the money paid. Those cases are not enough like the one before us to call for any particular examination. Although the defendant was an officer, he had neither process nor power to imprison; and he did no more than to present his accounts to the board of supervisors, and humbly beseech them to settle the claim, and pay the money. He used no compulsion; and the supervisors were not in a situation where any advantage could be taken of them. The payment was plainly a voluntary one; and falls within no case where money has been allowed to be recovered back.

Some stress has been laid on a remark in *Miller* v. *Aris,* that the illegal charge was authorized by the justices who *passed the accounts;* and that has been likened to the taxation of these costs. But it does not appear in that case that the justices had any authority to tax or allow the charge. And besides, it is evident from the context that the remark related to the fact that the defendant had accounted to the county for the moneys which the plaintiff sought to recover. It has no bearing whatever on the present question.

My conclusions are, *first,* that the taxation was a judicial de-

termination of the matter by officers duly authorized to adjudicate upon it; and consequently that the taxation cannot be set aside or disregarded in this collateral action.

*Second.* But if the taxation is not conclusive, then the matter has been adjudicated by the board of supervisors, who had ample authority to decide it; and their determination is conclusive upon both parties; and especially upon themselves. And

*Third.* The plaintiffs have voluntarily paid the money with a full knowledge of all the facts, and cannot therefore recover it back.

I have thus far considered the general question presented by the last trial, which is, whether the plaintiffs can recover under the common count for money had and received to their use. On the new trial which must be ordered, the plaintiffs may seek to recover under the counts for treble damages given by the statute; and it is therefore proper to notice that question, by way of instruction for the new trial.

And in the first place, I will inquire what is forbidden by the statute. No judge or other officer " to whom any fees or compensation shall be allowed by law for any service, shall take or receive any other or greater fee or reward for such service, but such as is or shall be allowed by the laws of this state." (2 *R. S.* 650, § 5.) This prohibits the officer from taking a greater fee or reward for some service rendered by him than the law allows for such service; and it only extends to cases where a fee or compensation is allowed by law for that particular service. It has nothing to do with charges for any service not coming within the fee bill; as where an attorney charges his client for a journey, or for drawing or copying papers for which no fee or compensation has been specially provided by law. For certain services the legislature has given to officers a specified fee or reward, and has forbidden them to take more. But where no fee has been prescribed by law, the legislature has not undertaken to say how much or how little shall be charged for any service which may be rendered. That is left to be settled by the principles of the common law.

The 6th section provides, that " no fee or compensation al-

lowed by law, shall be demanded or received by any officer or person for any service, unless such service was actually rendered by him." This provides for the case where the "fee or compensation allowed by law" for some service, has been taken by an officer, when the service had not in fact been rendered.

Both sections are confined to cases where a fee or compensation is allowed by law for the service charged; and in such cases, the officer is forbidden to take more than the law allows where the service has been rendered; or to take any thing where the service was not rendered. And then the violation of either section is made a misdemeanor, and the officer is liable to the party aggrieved for treble the damages sustained by him, (§ 7.) These provisions in relation to the taking of fees in civil cases, apply also to the taking of fees for services in criminal cases. (2 *R. S.* 753, § 17.)

If we apply what has been said to the facts as they appeared on the last trial, the plaintiffs cannot in any event recover but a very small sum under the statute. The charges which were rejected on the ground that the services had not been rendered, amounted to only $37. All the other charges which were disallowed by the circuit judge, were for services which, though actually rendered, were said not to be such services as came within the fee bill. In other words, they were rejected and the plaintiffs allowed to recover back the money, not on the ground that the services had not been performed, nor that they were charged at too high a rate; but on the ground that such services were not provided for by the fee bill. That is a case, as we have already seen, not within the statute giving treble damages. This is a penal statute, which cannot be extended by construction.

If the plaintiffs can, to any extent, bring their case within the terms of the statute giving treble damages, it remains to be considered whether they can recover under the statute; or whether the taxation is not an answer to that action, as well as to the one at common law. I think it is. The bills have been regularly taxed. In all cases where notice was required by law notice was given to the plaintiffs. The just extent of the de-

fendant's claim—the matter of right between him and the plaintiffs—has been adjudicated by an officer duly authorized by law to determine the question. Although the thing was done in a different manner from that in which courts usually proceed, yet it was done in the manner prescribed by law; and, in principle, it is precisely the same thing as though the matter had been adjudged by any court in the state. Although a justice of the peace does not hold a court of record, his judgments are just as conclusive upon the parties as are the judgments of this court. And so it is also of the judgments or determinations of every judicial officer having authority to hear and determine. And when a party takes money in pursuance of an adjudication duly made in his favor, it is to my mind a most extraordinary proposition to say that he can be subjected to an action for taking it, nay more—to a prosecution for a misdemeanor; for if the action will lie, the party may also be punished criminally.

I am aware that the chancellor has on two occasions thrown out the suggestion, that the taxation of his bill of costs would not protect a solicitor against an action for treble damages, where he takes pay for services not actually performed. (*Rogers* v. *Rogers*, 2 *Paige*, 458, 475; *Wendell* v. *Lewis*, 8 *id*. 618.) But these were but *dicta*. The same question, in principle, was afterwards directly presented on a bill to recover moneys which had been taken for usury; and there, as the money had not been voluntarily paid, but had been taken under judgments rendered by a justice of the peace upon the usurious contracts, the chancellor held that the complainant could not recover, and dismissed the bill with costs. (*Bartholomew* v. *Yaw*, 9 *Paige*, 165.) In that decision I fully concur. The law will never do so absurd a thing as to hold, that money which has been paid under an adjudication that it is the party's due, can be recovered back. To take money in pursuance of such an adjudication is neither an illegal nor a criminal act. A different doctrine would set the law in array against itself. Its ministers would first decide that a sum of money was due from A. to B.; and the moment the judgment had been carried into execution, the same

ministers would be compelled to say that the thing was all wrong, and the money must be restored.

In more than one of the opinions delivered in the court of errors, as well as in the arguments at the bar, considerable importance has been given to the fact that taxing officers sometimes discharge their duties in a careless and improper manner. But this fact, as I conceive, does not at all affect the principle. The same thing may be true of any other officer, or of any court of justice. But however erroneously, or even corruptly, they may decide, their judgments and determinations over matters within their jurisdiction are conclusive upon the parties, until they have been reversed, vacated or set aside by some appropriate proceeding for that purpose. They cannot be attacked and nullified in a collateral action.

It is said that costs are always taxed before they are paid, and that if the taxation is conclusive, the party can never have an action for treble damages. It is a very great mistake to say that costs are always taxed before they are paid. It is not so, even in the case of attorneys and solicitors, although they usually have their bills taxed. And there are a multitude of other officers who take fees, and who very rarely have their bills taxed. There is scope and verge enough for the operation of the statute giving treble damages, without wielding it against those who have taken the precaution to have their bills regularly taxed before they receive the money. And here it is proper to say, that by regular taxation I mean a taxation between the attorney or solicitor and the party who pays the money, and upon notice and opportunity for contestation where notice is required by law, or by the practice of the court. When the matter of right between the parties has been thus settled in the mode prescribed by law, there is no principle upon which an action to recover back the money can be supported.

We have been referred to cases which hold, that where one has by his own testimony procured a judgment between *other parties*, he cannot use the judgment as evidence in his own favor. (*Case* v. *Reeve*, 14 *John*. 79 ; *Maybee* v. *Avery*, 18 *id*. 352.) But if the legislature choose to make a man a witness in

his own cause, as they have done in the case of district attorneys, there is no authority for saying that a judgment in his favor is therefore void, and may be treated as a nullity. It is just as valid as though the party had not been a witness.

Being of opinion that the plaintiffs cannot recover back any part of the moneys which they claim, there would be no use in examining the several classes of charges to which exception has been taken.

BEARDSLEY, J. and JEWETT, J. having been professionally concerned in the cause, gave no opinion.

New trial granted.