Johnson, J.
This case presents directly the question: In whom, on the 28th of April, 1873, was vested the final authority to audit, settle and .allow claims against the county of Hew York ?
The "claim was for -compensation to the relator for services in estimating and computing the taxes, and in extending them on the assessment rolls. His employment was by the president of the board of -supervisors in the name of the board, under chapter 573 of the Laws of 1871. The service thus rendered was unquestionably a county charge. As such, by a resolution of the board of supervisors adopted April, 28, 1873, it was audited and allowed at the sum of $11,887.50, and the comptroller directed to pay the same. This he has refused to do, resting that refusal on the sole *469 ground of fact stated by the affidavit of the auditor, that the services of the relator were not reasonably worth more than one-half of the sum claimed; and insisting, as matter of law, that the audit and allowance of the board of supervisors was not final and conclusive, but that the finance department of the city, acting for the county, under the statutes of 1870 (chaps. 137, 190) could alone make a final and conclusive audit and allowance of the charge. Other questions might have been presented on the record, but they are waived'and the case is to be disposed of on the questions stated.
Under the provisions of the Eevised Statutes, the board of supervisors in each county had power to examine settle, and allow all accounts chargeable against the county (1 R. S., 367, § 4, sub. 2); and this provision was, with the others contained in article 1, title 2 of chapter 12 of part 1 of the Revised Statutes, declared applicable to the mayor, recorder and aider-men of the city of blew York as supervisors of that city and county, except where special provisions inconsistent therewith were or should be made by law in respect to that city and county. Indeed the same power had continued to be vested in the board of supervisors from the year 1788. (2 J. & V., 345.) This power was exclusive of all other authority over the subject to this extent, at least, that when exercised it was subject to no review, and that no action could be maintained against a county for a county charge. (Huff v. Knapp, 5 N. Y., 67; Brady v. Supervisors of N. Y., 10 id., 260; People v. Lawrence, 6 Hill, 244; People v. Supervisors of Dutchess, 9 Wend., 508; Supervisors v. Briggs, 2 Denio, 26, 39.) These conclusions were held to result from the terms in which the power was conferred, viz.: to examine, settle and allow all accounts chargeable against a county, and from the further provision of the statute which required accounts of every description to be presented to the board of supervisors of a county to be audited by them. (1 E. S., 386, § 4.) It may be properly said that this jurisdiction of the board of supervisors, over the allowance of county charges, had, by its long continued and uniform existence *470 become as nearly fundamental in the administrative polity of this State as any mere statutory regulation could be. It might naturally be expected that, if the legislature intended to introduce a new and different rule of administration in any particular part of the State, that intention would be expressed in clear and definite terms, and would not be left to be spelled out under the form of an implied repeal of a power so long established and so well understood. Yet, if any such change of the law has taken place it has been introduced in this indirect way, and if it exists it has from 1857, when the change is supposed to have occurred, up to 1871 failed to obtain any judicial recognition. It is certainly not surprising that the very great abuses which unhappily prevailed in the government of the city and county of Hew York, should have led to the trying of every expedient which might seem calculated to afford a prospect of relief; but no such consideration can be allowed to influence our judgment in respect to the effect to be given to legislation. It is of course obvious that a particular individual may be a safer depositary of power than a particular board of supervisors, but it will scarcely be contended or conceded that, in general, legislation which should confer irresponsible power upon individuals rather than upon representative bodies, would be either safe or judicious in • respect either to private or to public interests, or consonant with the general scheme of republican government.
It is contended that the provisions of the Revised Statutes before quoted were abrogated, and the power of the board of supervisors in Hew York was superseded by that of the comptroller and his subordinate, the auditor of the city, so far as the audit and allowance of county charges is concerned, by force of chapter 590 of the Laws of 1857. That chapter created a new board of supervisors for the county of Hew York, and provided that the vote of a majority of all the members elected to the board should be necessary to pass any act, ordinance, or resolution appropriating money, which was also to be signed by the mayor or approved again by the board if returned unsigned by the mayor, before it should take effect. It further *471 provided, that no money should be drawn from the treasury except the same should have been previously appropriated to the purpose for which it was drawn, and also, “ that no expense should be incurred, whether ordered by the hoarder not, unless an appropriation of moneys then in the treasury, sufficient to cover such expense, should have been previously made.” And also, “ that no allowance or payment beyond legal claims should ever be allowed by the board.” Upon these provisions it may be observed that there is a clear power to appropriate money by act, ordinance or resolution in the board of supervisors, and a restraint upon that power against the allowance by the board of anything beyond legal claims. There are besides, restraints upon the payment of money or the incurring of expenses, whether ordered by the board or not, which are addressed and intended to operate, not upon the board itself, but upon the administrative officers whose duty it is to execute and carry out the orders of the board. Eo money can be drawn until apppropriated to the particular purpose for which it is drawn. Eor can any expense be incurred, unless on an appropriation of money actually in the treasury. Under these provisions I find it difficult to see what legitimate objection can be made-to an ordinance or resolution declaring that the board has examined, allowed and audited a county charge in favor of a-named person at a definite sum. Under the Revised Statutes the chairman of the board has power to administer an oath to any person in respect to any such claim (1 R. S., 367, § 8); and it is the duty of the clerk to designate, on every account, the amount audited and allowed by the board,, and the charges for Avhich the allowance is made. (§ 12.) It would seem, therefore, to be plainly competent for the board, in the exercise of its power, to appropriate money to attain exactly the same result; and to fix, by its ordinance or resolution, all the detail of person and amount necessary to the complete discretionary action of the board. There is nothing in the provisions of the act of 1857, so far as they have been now stated, inconsistent with the idea that the legislature intended this *472 power to exist. On the contrary, looking to the authority given and to the particular restrictions imposed upon the board, of supervisors, the inference is direct and strong that the legislative intent was to continue in the board the general power which had been so long exercised by all .boards of supervisors throughout the State, and which the board of supervisors of Yew York had likewise, theretofore, always possessed.
The change of power which is set up on behalf of the defendant is claimed to have been introduced, not by a direct enactment that the board of supervisors shall exercise its authority subject to the revision and final control of the comptroller and auditor of the city of Yew York, but by the indirect effect of the sixth section of the act of 1857. This section declares, “ that the finance department of the mayor, aldermen and commonalty of the city of Yew York and its officers shall have the like power and perform the like duties in regard to the fiscal concerns of said board as they possess, in regard to the local concerns of the said mayor, aldermen and commonalty. All moneys drawn from the treasury by authority of the board of supervisors shall be upon vouchers for the expenditure thereof, examined and allowed by the auditor and approved by the comptroller; and no such moneys shall be drawn therefrom, except on the warrant drawn by the comptroller and countersigned by the mayor and clerk of the board ; and no other warrant shall be necessary for such purpose.” (Laws of 1857, vol 2, p. 286.) The latter part of this section which relates to the special duties of the comptroller and auditor, in respect to vouchers for .expenditures, assumes the board of supervisors as the source .of authority for such expenditures, and requires of the officers named an examination and approval of vouchers, with a ■view of ascertaining whether the will and authority of the ■board of supervisors supports and sustains the payments which are asked for. The vouchers required are such as show the demand to be that contemplated' and fixed by the action of the board. The purpose is to insure conformity to *473 the action of the board, not to introduce a control and review of its action by a superior power. The function is subordinate, not supervisory. Indeed, no means or machinery is provided by which such supposed supervision can intelligently be exercised. The supervisors are not required to send up or down to the auditor and comptroller the proofs taken before their chairman, and on which they may have acted. Hor had either of the officers named, up to the year 1873, any power to take proof in respect to the justice of any such claim. Thus the power which is claimed for these officers over the action of the board of supervisors is either a mere arbitrary power to be exercised at the caprice of the officer, or he is intrusted with a power of deciding without evidence, and subject to no review upon the interests of parties, whose rights' have been previously determined by a board sitting in public with power to procure evidence, and who have therefore the means to enable them to do justicé and must be presumed to intend it. To introduce a power of this sort into the administration of public affairs ought at least to require a plain and unmistakable disclosure of the legislative will.
Turning attention then to the first branch of the section referred to, we find that in regard to the fiscal concerns of the board of supervisors, the finance department of the city of Hew York and its officers are to have the like powers and to perform the-like duties as they possess in regard to the local concerns of the city corporation. What these are, we find disclosed in the amended city charter. (Laws of 1857, chap. 446, p. 879.)
§ 22. “ There shall be an executive department which shall be denominated the ‘department of finance,’ which shall have control of all the fiscal concerns of the corporation, and shall prescribe the forms of keeping and rendering all city accounts; and all accounts rendered to or kept in other departments of the city government, shall be subject to the inspection and revision of the officers of this department. It shall settle and adjust all claims in, favor of or against 'the corpo *474 ration, and all accounts in which the corporation is concerned, either as debtor or creditor. The chief officer of this department shall be called the comptroller of the city of New York.
*****
“ There shall be another bureau in the department of finance, to be called the auditing bureau, and the chief officer thereof shall be the auditor of accounts. It shall revise, audit and settle all accounts in which.the city is concerned as debtor or creditor; it shall keep an account of each claim for or against the corporation, and of the sums allowed upon each, and certify the same, with the reasons for the allowance, to the comptroller. The comptroller shall report to the common council, once in ninety days, the name of every person in whose favor an account has been audited, with the decision of the auditor upon the same, together with the final action of the comptroller thereon.
“ All moneys drawn from the city treasury shall be upon vouchers for the expenditure thereof, examined and allowed by the auditor, and approved by the comptroller, and filed in his office.”
The effect of these previsions of law, as to the power of the board of supervisors, was brought into discussion in 1861, before Mr. Justice Sutherland in the People ex rel. Kelly v. Haws. The application was at chambers on a motion for a mandamus. He considered the ease in an elaborate opinion, and held that the comptroller had not power under the statutes cited, to examine and disallow county charges which had been examined and allowed by the board of supervisors, and that his power, in this regard, was limited to an examination of the vouchers. (12 Abbott Pr. R., 192.) It had been previously held in the General Term of the first district in 1858, Justice Davies giving the opinion, that after audit and allowance of a claim by the board of supervisors, there must be, to entitle the party to a mandamus to compel payment, an audit and allowance by the auditor and an approval by the comptroller of the vouchers on which payment was demanded, *475 (People ex rel. Ellis v. Flagg, 15 How., 553.) So far as we are informed, these decisions were acquiesced in by the parties immediately concerned. Covering substantially the whole question of construction of the act of 1857, in regard to the board of supervisors, and consistent with each other, these two decisions remained unquestioned, although they involved matters of great practical importance and of constant practical application, and affected very large values. They were, we are warranted in saying, deemed, as well by the public authorities as by private citizens, a satisfactory exposition of the law.
The acts of 1870 (chap. 137, p. 374, and chap. 190, p. 482), which are the acts directly involved in the present suit, are in substantially the same terms as the Laws of 1857, which have been commented on. It is entirely fair to infer that if the construction put upon the preceding acts in the decisions referred to, had been deemed unsatisfactory, as not carrying out the legislative intention, other language would have been adopted in the acts of 1870, better fitted to express those views. The re-enactment of the same provisions should be deemed an adoption by the legislature of the construction put upon those acts. It is only the stress and pressure produced by the recent frauds in the administration of the city and county government,which have led to the attempt to reopen the question involved, in the hope of detecting and baffling fraudulent claims. The purpose is praiseworthy, but we do not think the law warrants us in giving it effect in this manner. Ho one can fail to see that in thus attempting to close one door against fraud we might, with other incumbents of the offices of comptroller and auditor than those now in office, be opening other doors quite as wide. Since the attempts in question to reopen the discussion of the meaning of these laws, judicial opinions have been pronounced on the subject by Judge Beady, at the General Term of the Supreme Court, in the first department, in The People ex rel. Martin Brown v. Green; by Judge Fancher, in The People ex rel. Martin v. Green, at Special Term of the same court in New York; by *476 Daly, C. J., at General Term of the New York Common Pleas, in The People ex rel. Brown v. Green; by Judge J. F. Daly, in the same court, at Special Term, in The People ex rel. Haskell v. Green, and by all the judges of the Common Pleas in the case at bar. We think that in view of the acquiescence in the construction placed on the act of 1857, and the great concurrence of opinion among the judges in the locality particularly affected by the laws in question, the original construction of those laws ought not to be disturbed.
There still remains a large and salutary power of supervision where the supervisors may have exceeded their jurisdiction, or where the vouchers are otherwise insufficient, as pointed out generally in the opinions, referred to, by which the public interests may be protected by the comptroller and auditor, in conformity with the law. The judgment of the Common Pleas should be affirmed, with costs.
All concur except Rapablo, J., not voting.
Order affirmed.