(68 App. Div. 231.)

BANK OF STATEN ISLAND v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. January 24, 1902.)

1. CORONERS' BILLS—AUDIT BY BOARD OF SUPERVISORS—JURISDICTION—COLLATERAL ATTACK.

Laws 1873, c. 833, as amended by Laws 1874, c. 535, and Laws 1878, c. 286, provides (section 4) that all items of coroners' compensation shall be a county charge, to be audited and allowed by the board of supervisors; and Laws 1892, c. 686, § 230, subds. 9, 10, provide that all moneys necessarily expended by any county officer in discharging his duties in cases in which no specific compensation is provided by law, and the accounts of the coroners of the county for such services as are

not chargeable to the person employing them, are county charges. *Held*, that the audit by the board of supervis rs of a coroner's bill, consisting for the most part of items expressly provided for by statute, the other charges being items not expressly provided for, but of a kind and class over which such board had jurisdiction, was, in the absence of fraud or collusion, binding and conclusive, and hence could not be collaterally attacked in an action to recover the amount of an order issued upon the strength of the audit.

2. SAME—BONA FIDE HOLDER—ESTOPPEL.

A bona fide holder of a warrant issued upon a coroner's bill duly audited by the board of supervisors, under authority of Laws 1892, c. 686, subds. 9, 10, providing that the board of supervisors shall audit the accounts of county officers, including coroners, and Laws 1878, c. 286, specially providing for the audit of coroners' bills, is entitled to recover in an action thereon, having relied upon the audit of the board of supervisors, although some of the items could not have been enforced in an action against the county for that purpose.

Bartlett and Jenks, JJ., dissenting.

Appeal from judgment on report of referee.

Action by the Bank of Staten Island against the city of New York. From a judgment in favor of plaintiff entered upon the report of a referee, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

William J. Carr (Samuel H. Evins, on the brief), for appellant.
William D. Gaillard, for respondent.

WOODWARD, J. The plaintiff, as assignee of one I. A. Silvie, brought this action against the city of New York to recover the sum of $3,370.35 on a warrant issued by the chairman and clerk of the board of supervisors of Richmond county dated December 31, 1897, and payable to I. A. Silvie, for services rendered as coroner in said county. This warrant was based upon four separate bills or claims presented by the said Silvie to the board of supervisors for audit, and, so far as the record discloses, these bills went through the ordinary course of procedure, and were duly audited and allowed by the board of supervisors. The warrant for the payment of the amount audited by the board of supervisors was issued in the usual form, and was discounted by the plaintiff, which became the owner of the same for value. The city of New York refused payment of the warrant, and put in a defense, alleging that "the act of the said board of supervisors, in attempting to audit said claim and issuing said order and placing same in county abstract for that year, were induced and procured by the plaintiff by fraud and misrepresentation of material facts upon which said claim was based, and are null and void." Upon the trial of the action before a referee the facts disclosed failed to show any fraud upon the part of the plaintiff or its assignor, and the decision of the referee supports the right of the plaintiff to judgment, which has been duly entered, and appeal comes to this court.

We are of opinion that the judgment should stand. The rule is well settled in this state that, where a matter has been submitted to an authorized judicial tribunal, its decision thereon is final between

the parties until it has been reversed, set aside, or vacated; and the rule of res adjudicata applies to all judicial determinations, whether in actions, or in summary or special proceedings, or by judicial officers in matters properly submitted for their determination. Culross v. Gibbons, 130 N. Y. 447, 454, 29 N. E. 839, and authorities there cited. There are two lines of cases in this state, one following Supervisors v. Briggs, 2 Denio, 33, and the other Board v. Ellis, 59 N. Y. 620, which, in their language, appear antagonistic, but, when considered in relation to the facts involved, this conflict disappears, and each, in its respective sphere, serves to make a harmonious rule of conduct. Supervisors v. Briggs, supra, holds the doctrine that where a board of audit, either of the town or county, has jurisdiction of the subject-matter, its determination, in the absence of fraud or collusion, is final and conclusive, and not the subject of attack in a collateral proceeding, even though the board may have erred in allowing a higher compensation than is warranted by the law. In other words, the audit of a bill by a body authorized by law to perform this duty is a judicial act, and may not be brought into controversy collaterally (Weston v. City of Syracuse, 158 N. Y. 274, 287, 53 N. E. 12, 46 L. R. A. 678, 70 Am. St. Rep. 472), although it may be that matters of this kind may be reached in a taxpayer's action under the provisions of section 1925 of the Code of Civil Procedure (Chittenden v. Wurster, 152 N. Y. 345, 368, 46 N. E. 857, 37 L. R. A. 809), or by a direct action to recover the amount illegally paid under such audit (Board v. Ellis, supra). The other ·cases follow Board v. Ellis, supra, which holds that a board of supervisors has no power to audit and allow accounts not legally chargeable to the county, and that such an audit is null and void. It may be disregarded by the officers of the county, and is not binding and conclusive upon a succeeding board. The same case holds also that the payment of such an account so audited is not a voluntary payment by the county, but an unauthorized act of its agents, and an action lies at the suit of the county to recover back the moneys paid. In this case the defendant was one of the supervisors of the county of Richmond during the years 1871–1872, and while holding such office he charged for and received from the treasurer of the county a per diem allowance and mileage while serving upon committees of the board when it was not in session; also his costs and counsel fees in an action to establish his right to the office of police commissioner, to which he was appointed by the board of supervisors of said county. An action was brought by the board of supervisors to recover back moneys alleged to belong to the county of Richmond and to have been unlawfully obtained by the defendant. The action was not to set aside the entire audit, but only to recover back such sums as had been audited and allowed by the board of supervisors without any authority whatever. The general term of the Second department, in a manuscript opinion, speaking of the facts in this case, say:

"The supervisors of a county have a trust confided to them, involving a faithful care and control of the public funds in the county treasury; and the voting and payment of unlawful claims to themselves, or to any one of

their number, is a breach of a high trust and duty; and the making up of such claim, and the taking the money therefor out of the county treasury, when such acts are established by the testimony, justify the allegations of fraud in the complaint." Supervisors v. Van Clief, 1 Hun, 454, 456.

In the case last cited the facts were substantially the same as in Board v. Ellis, supra, and the judgment of the general term was affirmed by the court of appeals, following the leading case. In discussing the case of Board v. Ellis, the court say:

"The charges for per diem and mileage while serving upon a committee appointed by the board of supervisors could not be enforced against the county. The law is plain that a supervisor may not claim from the county for services other than attendance at the sessions of the board and mileage thereon. Laws 1869, p. 2060, c. 855, § 8. He is confined in amount to the rate of three dollars per day, and limited as to the number of days to full days' service during the sessions of the board, and is awarded in addition thereto his mileage allowed by law. And, to make this the more emphatic, it is enacted that he shall not receive any other compensation whatever, except as the same is specially provided for by law. * * * It is claimed, however, that, the board of supervisors in one year having audited and allowed them, the board of supervisors in a later year, being the same body in law (Supervisors v. Birdsall, 4 Wend. 453), cannot disregard that action. Doubtless, if a board of supervisors at one time acts finally upon a matter of which they have jurisdiction, and as to which they have lawful right to act, a succeeding board may not undo what they have done to the immediate detriment of third parties. Id. I do not think that any decision will be found which goes farther than this. But it has appeared that these were not legal charges against the county of Richmond. A board of supervisors has no power to audit and allow accounts not legally chargeable to their county, and if it attempts so to do it is an act in excess of jurisdiction, done without the power to make it valid, and is null and void."

In the case of Supervisors v. Briggs, supra, which was entirely familiar to the learned jurist who wrote in Board v. Ellis, supra, as will hereafter more fully appear, the point had been urged that the taxation of costs was not conclusive when the officer whose duty it was to tax such costs allows charges which are not authorized by the fee bill, the reason being that when the officer goes beyond the fee bill he has no jurisdiction. Commenting upon this proposition, the court say:

"If the argument be carefully analyzed, it will, I think, be found to come to this: When the officer decides right, the decision is conclusive; but when he decides wrong the decision is good for nothing. He has jurisdiction to decide right, but no jurisdiction to decide wrong. With great respect I must be permitted to say that this reasoning is utterly fallacious. It would not only overturn the authority of taxing officers, but it would upset the jurisdiction of every other officer and court in the state. Courts are established, and judges and other judicial officers are appointed, for the purpose of administering justice; and it is their duty, so far as they can discover the truth, to decide right. But the power to decide at all necessarily carries with it the power to decide wrong as well as right. It is just as true of all our courts as it is of taxing and other judicial officers that they have no commission which, in terms, authorizes them to do wrong; but in the present imperfect state of human knowledge a power to hear and determine necessarily includes and carries with it a power which makes the judgment or determination obligatory, without any reference to the question whether it was right or wrong. If it were not so, the judgment or determination would be of no value. Any one might resist it at pleasure, under the plea that the court or judge had committed an error."

In distinguishing the case cited the court in Board v. Ellis, supra, say:

"In that case the opinion gives first an ample and conclusive ground for the conclusion there reached; in the facts and the legal consequence therefrom, that the charges against the county had been taxed by a taxing officer having jurisdiction, upon notice to the board of supervisors, and that the taxing officer had allowed no item in the bill upon which he had not the power to pass. There was thus an adjudication by a competent tribunal, from which there had been no appeal. It was res adjudicata. It then declares another ground,—that the board of supervisors had audited and allowed the claims, and that their action in that respect was final and conclusive, and binding upon their successors. The claims of the defendant against the county in that case were alleged to be for his fees and expenses as district attorney in criminal cases. The opinion says that these are a charge upon the county; that they had been presented to the board, which had power to examine, settle, and allow all accounts chargeable against the county, and had been examined, settled, allowed, and paid. I do not understand the opinion to assert or to intimate that, if these claims had been clearly illegal, such as were not chargeable to the county, against the demanding, auditing, paying, and receiving of which there was express and clear provision of law, the board would have had authority to audit and pay, or that, if they had done so, their actions would have been conclusive. Indeed, I understand the contrary; for the opinion had just cited People v. Lawrence, 6 Hill, 244, where it was held that a board of supervisors which had allowed a sum of money when the claimant had rendered no services to the county had exceeded its jurisdiction. But no more than if it had allowed for a service, as in the case in hand, for which the law forbade compensation to be made; and in this case, as in that, jurisdiction was exceeded, and there was no color for making the allowance."

It seems clear, therefore, that there is no conflict between Supervisors v. Briggs and Board v. Ellis. It is a question of jurisdiction, and where the auditing board has jurisdiction of the subject-matter, and there is no fraud or collusion, the determination is final and conclusive so long as it remains unreversed. It might be said in this case, as in Supervisors v. Briggs, supra, that the taxing officers allowed nothing where there was not plausible grounds for making the allowance. Each of the accounts was accompanied by an affidavit—the proof prescribed and allowed by law—that all the services therein charged had been actually performed, and, although as to some of the charges there can be no doubt that the taxing officers were wrong, still it was but an error of judgment, and not a defect of jurisdiction. It was an error to be corrected by appeal after an appeal was given, and before that time it was to be submitted to as a final determination of the matter. Supervisors v. Briggs, supra, page 35. Chapter 833 of the Laws of 1873, as amended by chapter 535 of the Laws of 1874, and chapter 286 of the Laws of 1878 provides (section 4) that "all items of coroners' compensation shall be a county charge, to be audited and allowed by board of supervisors"; and section 230 of the county law (chapter 686, subds. 9, 10, Laws 1892) provides that "the moneys necessarily expended by any county officer in executing the duties of his office in cases in which no specific compensation for such services is provided by law" and "the accounts of the coroners of the county for such services as are not chargeable to the person employing them" are county charges. The services charged for by the coroner are, for the most part,

such as are specifically provided for by the act providing for the fees of coroners, cited above; and it has been frequently held that services rendered to a county in pursuance of a legal employment, for which no specific compensation is provided, are contingent charges against the county. People v. Common Council of Kingston, 101 N. Y. 82, 96, 4 N. E. 348, and authorities there cited; People v. Board of Sup'rs of Columbia Co., 134 N. Y. 1, 5, 31 N. E. 322, and authorities there cited. The determination as to the allowance of these items the statute relegates to the board of supervisors, and the decision of the auditing board as to the amount, necessity, and reasonableness of the expense incurred in the absence of fraud or collusion, is final and conclusive. People v. Common Council of Kingston, supra, citing Osterhoudt v. Rigney, 98 N. Y. 222; Weston v. City of Syracuse, 158 N. Y. 274, 287, 53 N. E. 12, 43 L. R. A. 678, 70 Am. St. Rep. 472, citing same authority. "But the statute of 1872," say the court in the Osterhoudt Case, at page 232, "has not abrogated the rule that the acts of a board of audit, within its jurisdiction, in the absence of fraud and collusion, are final and conclusive, and cannot be questioned in a collateral proceeding. Whether the claim is a proper town or county charge, in a case where it is doubtful, and rests upon disputed evidence, and what amount shall be allowed, when not fixed by statute, are questions which the statute commits to the determination of the board of audit; and, however much it may err in judgment upon the facts, so long as it keeps within its jurisdiction, and acts in good faith, its audit cannot be overhauled, but is final as well as to the taxpayers as to the claimant,"—citing Supervisors v. Briggs, supra, and People v. Board of Sup'rs of Delaware Co., 45 N. Y. 196. The case of Wittmer v. City of New York, 50 App. Div. 482, 64 N. Y. Supp. 170, does not conflict with this view, and it does not seem necessary to enter into a discussion of its distinguishing features. See, also, People v. Lawrence, 6 Hill, 244, 245, bottom of page; People v. Supervisors of Albany Co., 12 Wend. 257; Village of Ft. Edward v. Fish, 156 N. Y. 363, 50 N. E. 973; People v. King, 19 Misc. Rep. 98, 99, 43 N. Y. Supp. 975.

It seems to us that it was competent for the board of supervisors to make some payment for services in looking up evidence, under the rule laid down in People v. Board of Sup'rs of Delaware Co., 45 N. Y. 196, 202, 203; and as the board of supervisors had jurisdiction of coroners' accounts, and must, as well as individuals, be presumed to have known the law, its successor cannot be heard to urge that the items of these accounts may be inquired into minutely for the purpose of defeating an action to recover the amount of an order duly issued upon the strength of the audit of the bills of plaintiff's assignor. The board of supervisors must be presumed to have done their duty; and as there seems to be no question that the plaintiff bought this order of the county in good faith, paying a valuable consideration, in the regular course of business, it is, in justice and equity, entitled to recover. It was the action of the board of supervisors, representing the people of Richmond county, which put it in the power of plaintiff's assignor to procure the plain-

tiff's money; and whatever might be the rights of the party in an action to recover the money from plaintiff's assignor, or whatever rights a taxpayer might assert in reference to the audit of these bills in excess of the legal fees, if there was such an excess, it would be most unjust and inequitable to allow the defendant to defeat the plaintiff in an action to recover that which is due upon the order which it now owns. It is not disputed that some part of the audit is right and proper, and we are persuaded that, while some of the bills could not be enforced against the county in an action brought for that purpose, the defendant is not in a position to interpose the defense which is here attempted. The board of supervisors cut out over $160 from the accounts of plaintiff's assignor, thus showing that the bills had been considered, and a determination reached; and the evidence is by no means conclusive that the charges made, less this amount, were not technically within the statute which provides the fees for coroners.

The judgment appealed from should be affirmed, with costs. All concur, except BARTLETT and JENKS, JJ., who dissent on the ground that some of the items included in the coroner's bill are so clearly unlawful that they could not be legalized by any audit.