JOHN LANNING *vs.* JOHN CARPENTER.

BENJAMIN CARPENTER, RICE TOMPKINS and BENSON SMITH
*vs.* THE SAME.

BENJAMIN CARPENTER and RICE TOMPKINS *vs.* THE SAME.

BENJAMIN CARPENTER and BENSON SMITH *vs.* THE SAME.

Although no adjudication in fact, by the court, nor the agency of any judge of the court, is required to warrant, or in entering, a judgment by confession without action, under the code, yet the judgment has all the qualities, incidents and attributes of other judgments. The entry of such judgment requires the exercise of the jurisdiction of the court, and when entered the judgment is by law a judicial act of the court, recorded by its clerk.

Hence the provisions of § 384 of the code, relative to the entry of judgments by confession, are only applicable to county organizations which are complete, as to the jurisdiction of the court, as well as for other purposes; in which, as such, the court may pronounce judgment, and has a clerk to enter its judgments.

Where the organization does not exist, as to such jurisdiction, no judgment of the court can be entered which depends in any way upon that organization for its validity; nor can a county clerk be *ex officio* clerk of the supreme court, in a county which is not organized as to such court.

Accordingly *held* that a judgment in the supreme court, by confession, entered in the clerk's office of the county of Schuyler, prior to the census mentioned in the act erecting that county, and consequently before the county had any legal existence in respect to the jurisdiction of that court, was null and void; and it was set aside, on motion. WELLES, J., dissented.

JUDGMENTS were entered and docketed in the above entitled causes by confession, without action, as follows : In the first cause, in the clerk's office of Schuyler county, on the 14th day of July, 1855, for $1450, and $5 costs. In the second cause, in the same clerk's office, July 16th, 1855, for $3500, and $5 costs. In the third cause, in the clerk's office of the county of Steuben, on the 19th day of December, 1855, for $1500, and $5 costs. In the fourth cause, in the same clerk's office, for the like sum as in the third cause.

In the first cause, the statement in writing by virtue of which the judgment was entered, after stating the amount for which the judgment might be entered, and authorizing the entry of

judgment therefor, contained the following further statement, viz : " This confession is for indebtedness from me to the said Lanning, arising out of the following facts, viz : on one promissory note given by me to the said Lanning, on the 8th day of December, 1854, for one hundred dollars borrowed money, on which is endorsed eleven dollars and sixty cents, said note due when given. Also, one promissory note of three hundred and forty dollars, made by me and dated October 17, 1854, due when given, and now owned by the said Lanning, the same being given for borrowed money. Also for the said Lanning assuming the payment of the sum of one thousand dollars at the Bank of Havana, on the 14th day of July, 1855, by which a note of one thousand dollars, made by me to the order of Samuel Carpenter at the said Havana bank, dated on the 31st day of May, 1855, and indorsed by the said Samuel Carpenter and D. J. Sunderlin, was paid and taken up. Dated July 14, 1855." (Signed) John Carpenter. This statement was duly verified by the oath of the defendant.

Executions having been issued upon all the judgments, a motion was made at the special term held in the county of Ontario, on the first Monday in April, 1856, on behalf of the plaintiffs in the last three causes, to set aside the judgment and execution in the first cause ; which motion, after the same was argued, was, in view of the importance of the questions involved, referred to the general term. The motion was brought on and argued before the general term held in the county of Cayuga, on the first Monday of June, 1856. The case was held under advisement by the general term until the December term thereof, held in the county of Monroe, when the motion was granted, and the following opinions were delivered.

*R. Campbell,* for the plaintiffs in the last three causes.

*D. J. Sunderlin,* for the plaintiff in the first cause.

T. R. STRONG, J. The county of Schuyler, at the time of the entry of the judgment in the first case, had no legal exist-

ence in respect to the jurisdiction of this court. The act to erect that county provides that for all purposes, except, among others, the jurisdiction of the supreme court, the territory particularly specified in it shall from and after the passage of the act, until after the next state census or enumeration, and thereafter for all purposes, be a separate and distinct county. (*Laws of* 1854, *p.* 913, § 6.) The judgment was entered prior to the census, and of course when the act as to the jurisdiction of this court was as though it had not been passed. If, therefore, the entry of the judgment required the exercise of the jurisdiction of the court, the judgment could not legally be entered in that county. So far as that jurisdiction was concerned, the judgment might as well have been entered in form in the office of a town clerk, or any private person.

The judgment in question was entered under the provisions of the code relating to the confession of judgments without action. (*Code,* §§ 382, 383, 384.) The mode prescribed by those provisions for entering a judgment by confession, is, that a statement in writing to the effect particularly specified in § 383, must be made, signed by the defendant, and verified by his oath. That statement, by § 384, may be filed with a county clerk, who shall indorse upon it and enter in the judgment book, a judgment of the supreme court for the amount confessed, with $5 costs, together with disbursements. The statement and affidavit, with the judgment indorsed, by the same section, constitute the judgment roll, and executions on the judgment may be issued and enforced in the same manner as upon judgments in other cases in this court. No adjudication in fact by the court, nor the agency of any judge of the court, is required to warrant, or in entering the judgment. The legislature have prescribed the judgment, and directed the clerk to enter it. But the judgment is, by the express terms of § 384, a judgment of this court. It has manifestly all the qualities, incidents and attributes of other judgments, and is to be proceeded with, and upon, in like manner. It does not differ from any other judgment except in the mode of obtaining it. The court has full control over it as to amendments, and in all other respects,

Lanning *v.* Carpenter.

as in the case of its other judgments.  I do not perceive why such a judgment does not occupy the same footing, and is not in like manner, in legal contemplation and effect, a judicial final determination of the court in the exercise of its jurisdiction, as judgments on failure to answer under subdivision 1 of § 246 of the code.  Judgments, under that subdivision, are entered by the agency of the plaintiff, and the clerk of the court, without any act otherwise of the court ; and yet no one can doubt that such judgments are, in a legal view, the judicial action of the court in the performance of its functions.

By our present judicial system, the clerks of the several counties of the state are clerks of the supreme court; ( *Const. art.* 6, § 19 ;) and, as such, each is to keep among the records of the court, a book for the entry of judgments, to be called the judgment book, in which the judgments of the court are to be entered. ( *Code,* § 279.)  Although it is not expressly declared that the duties to be performed by the county clerk in entering judgments by confession, are to be done by him as clerk of this court, it is obvious that they are required of him in that character, and as having, in that capacity, the judgment book in which the judgments are to be entered, and other records of the court.  The clerk, as a ministerial officer of the court, in obedience to the law, which specifically prescribes the judgment, and dispenses with a special application to the court in such cases, enters the judgment of the court.  The judgment is, by law, a judicial act of the court, recorded by its clerk.  It seems to follow, that the provisions of § 384, as to the entry of judgments by confession, are only applicable to county organizations which are complete as to the jurisdiction of the court, as well as for other purposes ; in which, as such, the court may pronounce judgment, and has a clerk to enter its judgments.  Where the organization does not exist as to such jurisdiction, it is not easy to see how a judgment of the court can be entered which depends in any way upon that organization for its validity ; nor is it plain, how a county clerk can be *ex officio* a clerk of the supreme court, in a county which is not organized as to such court.  And how could an execution, which is

process of the court, depending upon its jurisdiction for vitality, be directed to the sheriff of a county which cannot be recognized by the court for the purpose of its jurisdiction.

The defect in the judgment in question, is not, that the court has not jurisdiction over the territory in the county of Schuyler, but that such jurisdiction can only be exercised under the county organizations which existed prior to the attempt to erect that county.

There are cogent reasons, relating to the validity of the act to erect the county of Schuyler, why it should not affect the jurisdiction of this court as it before existed, but as the act does not purport to do so, they need not be stated.

In my opinion the judgment could not be legally entered independent of the aid of the jurisdiction of this court; and for the foregoing reasons it is a nullity.

The motion to set aside the judgment and subsequent proceedings, must therefore be granted, with $10 costs.

E. DARWIN SMITH, J. This motion was first made before me at the Steuben circuit, in January, 1856, when I declined to decide it, chiefly on the ground that it was doubtful whether my decision could in any way be reviewed.

The question of the validity of this judgment came before me again at special term in that county, on a motion to dissolve an injunction founded on the judgment; which motion I granted, and wrote thereupon the brief opinion which may be found in 12 *Howard*, 191, which opinion was prepared chiefly with the view to draw the attention of the public to the difficulties in the case, that they might be obviated during the sitting of the legislature then in session. The legislature having unfortunately adjourned without making any provision in respect to the exercise of the jurisdiction of this court in that county, the difficulties remain, and this motion being here renewed, we are obliged to decide it. As my brother Welles has come to conclusions upon the motion in which I cannot concur, and I am ignorant of the views of my brother Strong on the question, I have deemed it due to the importance of the case and the part I am called upon to take in its decision, to state the reasons for the conclusions to which I

have come, more fully than they are contained in the brief opin-
ion above referred to in *Howard.*

In proceeding to erect the new county of Schuyler the legis-
lature was embarrassed, among other difficulties, with the seve-
ral provisions of the constitution providing for the organization
of judicial, senatorial and assembly districts. The territory
proposed to be organized into the new county was embraced in
two judicial, two senatorial, and at least three assembly districts.
These districts are unalterable by the legislature till after the
next decennial state census. (*Const. art.* 3, § 485; *art.* 6, § 16.)
To obviate this difficulty, which was insuperable, so far as the
immediate erection of the new county was concerned, the sixth
section of the act, after the territory to compose the new county
had been described, declared that such territory, from and after
the passage of such act, should for all purposes " except the
election of members of the legislature and justices of the supreme
court and for the holding and jurisdiction of the supreme and
circuit courts and courts of oyer and terminer, until after the
next state census or enumeration, and thereafter for all purposes
whatever, be a separate and distinct county of the state of New
York, by the name of Schuyler." This exception is in, and is
part and parcel of, the enacting clause, and is obviously essen-
tial to the validity of the act. Without it the act would have
been clearly and palpably unconstitutional. Such being the
necessity for the exception, it obviously restrained the act from
having any force or effect whatever within its legitimate scope.
So far as relates to this court and courts of oyer and terminer,
and the election of members of the assembly and of the sen-
ate, the act has no force or validity as a *law :* it is utterly null
and void and inoperative ; else the exception will not have ac-
complished its purpose of saving the act from the imputation of
palpable unconstitutionality. This being so, the whole territory
embraced within the limits of the proposed county of Schuyler
remains, so far as relates to this court and to the election of
senators and members of assembly, as before, part of the original
counties of Tompkins, Chemung and Steuben, *precisely as if
this act had never passed.*

If this act had never been passed, the jurisdiction of this court in all its departments would of course have been exercised over the people within the limits of the proposed county of Schuyler, or in the counties of which they are a part, in and through the ordinary officers and modes of judicial administration. It must be so still; or else this act has some force in conflict with the ordinary rights and privileges and immunities of the people of that territory in respect to this court. So far as it invades any of such rights, privileges and immunities, if it does so at all, or affects them, it is unconstitutional and null—no act or law. This is patent on the face of the bill, and is confessed by force of the very exception in question. This view, it seems to me, conclusively disposes of the questions presented on this motion; for if the judgment sought to be set aside is a valid judgment of this court, the exception aforesaid is utterly abortive. This court acts through officers. A clerk and sheriff are legitimate officers of the court, essential to its action and included within the ordinary agencies or machinery for the exercise of its powers and jurisdiction. Sheriffs and clerks are constitutional officers. (*Const. art.* 10, § 1.) Clerks of counties are clerks of this court. (*Const. art.* 6, § 19.) Within the limits of these respective counties, sheriffs and clerks are the exclusive officers for the exercise of their particular functions, and are entitled to all and singular the fees and perquisites pertaining to their respective offices. The incongruity of two sets of officers of the same name and title and exercising the same precise functions, must be in conflict with the constitution. One set of such officers must be without lawful authority, and mere usurpers. The sheriffs and clerks of the respective counties are entitled to the full and complete enjoyment of all the privileges, rights and franchises pertaining to their offices, of which they cannot be deprived by the legislature, except by a constitutional act creating a new county. It follows, that before the sheriff and clerk of Schuyler county can lawfully take the fees and perquisites which pertained to the sheriff and clerk of Tompkins, Chemung and Steuben counties, they must be full constitutional officers. It is unnecessary to maintain that the

sheriff and clerk of Schuyler county, elected in pursuance of the provisions of said act, are not for the same purposes legal officers. If the act is constitutional, aside from the question presented upon the exception, in respect to this court and the election of senators and members of assembly aforesaid, as is held in *De Camp* v. *Eveland*, (19 *Barb.* 81,) that does not affect the question presented on this application. Upon the assumption that there is a lawful county clerk in Schuyler county for some purposes, the question recurs, whether the powers claimed for such clerk and exercised by him in entering up and docketing the judgment sought to be set aside by this motion, pertained to " the jurisdiction of this court." It is claimed by the counsel for Lanning, and the argument is concurred in by my brother WELLES, that the act of perfecting the judgment in question was not an act done and performed by him as a clerk of this court, but was done under the express authority of the statute, and that the judgment is a mere statute judgment. Whether the legislature can authorize a person not a lawful clerk of some county in the state to enter up and perfect a judgment in, or of this court, is a question that does not arise. The point is, has the legislature done or attempted to do any such thing? I think it has not. Section 279 of the code is as follows : " The clerk shall keep among *the records of the court*, a book for the entry of judgments, to be called a judgment book." To confess a judgment, a defendant must make a statement in writing and verify it, pursuant to section 383. This statement is to be filed with a county clerk, who shall indorse upon it and enter in the *judgment book* a judgment of the supreme court for the amount confessed, with $5 costs, together with the disbursements. The statement and affidavit, with the judgment indorsed, shall thenceforth become the judgment roll. All judgments of this court are to be entered in this judgment book. (§ 280.) And on filing the judgment roll the clerk is to docket the judgment. This is done in another book kept by the clerk as clerk of this court, in which all judgments are entered before they become liens. (*Rule* 4, *S. Ct.*) Section 466 of the code declares that the word clerk, as used in

the act, signifies the clerk of the court where the action is pending, and in the supreme court the *clerk of the county mentioned in the title to the complaint.* The title of the county mentioned in the statement and affidavit on which these judgments were entered up, was *Schuyler county.* No *complaint* can be so entitled, for no venue in this court can be laid in that county. How then can any such *clerk* receive and file such statement and docket a judgment in this court? The venue is essential to designate the place of trial and the clerk's office where the proceedings are to be filed. A fee of fifty cents is allowed to the clerk for entering a judgment. (§ 312 *of the Code.*)

The clerk is to adjust the costs, and in a case like this, in addition to the $5 costs allowed by section 384, he must pass upon the disbursements to be allowed the plaintiff. (§ 311.) This is in the nature of a judicial act to be performed by the clerk, as clerk of this court. (*Supervisors of Onondaga* v. *Briggs,* 2 *Denio,* 26.) All the acts authorized by any provision of the code to be done by the clerk of the county, as above stated, and elsewhere, relate to his character as *clerk of this court ;* all pertain to him as *an officer of this court,* and not otherwise. If this judgment is regularly docketed in Schuyler county, it is a lien upon the real estate of the defendants in that county. (§ 282.) Executions are to issue, following the judgment, to the same counties as upon other judgments of this court. (§ 384.) There can be no doubt, I think, that the execution is process of this court, and under its control, like all other process. If the clerk of Schuyler county can docket a judgment in that county, I can see no reason why the plaintiff may not issue execution thereon to the sheriff of that county, and why the sheriff is not equally a legal and constitutional officer of this court to enforce and collect such execution. If this can be done, I cannot see why the clerk and sheriff are not full officers, for all intents and purposes within this county, the one to enter up and docket any judgment, and the other to collect any execution to him delivered in or out of this court. If the sheriff can execute one execution as sheriff, he can execute all executions, and must do so

exclusively within the limits of his county. If he cannot do this, he cannot do any act as sheriff in the service of the process of this court; for he is either sheriff or not sheriff. I cannot agree that he may, for the enforcement of the process of this court, execute the office of sheriff concurrently with the sheriffs of Steuben, Chemung and Tompkins, within the former portions of those counties embraced within the limits of Schuyler county. I deny that the legislature has any power to subject the people of that territory to such conflicting jurisdictions. It would be abusive and intolerable. The power of the clerk of a county to receive and file a statement and confession of judgment, indorse the roll and adjust the costs, and give transcripts of the docket, and the power of the sheriff to collect any executions on such judgments, are acts all *pertaining to the jurisdiction of this court,* and in my opinion are all embraced within the exception aforesaid; as much as the power of a grand jury in either of the original counties to indict, and the power of the court of oyer and terminer, sitting in Steuben, Tompkins and Chemung counties, to try a person for murder committed within such county, or that of the sheriff of the proper county to execute such person after such conviction. Suppose the clerk had committed some neglect in docketing this judgment, for which an action would lie; or suppose the defendant, or the parties making this motion, instead of moving to set aside this judgment and execution, had elected to sue the sheriff in trespass for levying the execution, where would the venue have been laid in these cases? Both the sheriff and clerk are entitled to be sued in their own county, and cannot be sued elsewhere. (§ 123 *of Code.*) The fact that they cannot be sued in their own county, for official acts, must imply that they have no county, are legal officers of no county, and that their acts as clerk and sheriff, so far as relates to this court, are utterly unauthorized. Before the passage of this act, the rights of the people comprised within this new county, for the collection of debts and the enforcement of claims, and their liabilities in respect to judicial prosecutions, were clear and explicit in respect to this court in its several branches or

departments. The legislature, in my opinion, in passing the act providing for the erection of the new county of Schuyler, did not intend to invade or change those rights, immunities or liabilities, or in any manner to affect them until a complete transfer of such rights and immunities could and should take place by the substitution of a new county with full and complete constitutional proportions demanding the support and the local allegiance of the people. The provisional arrangement made in this act for the creation of such a county this court has held, in 19 *Barb.* 81, was constitutional. According to this decision, and the obvious intent of the legislature, the county will be complete in the properties essential to its separate constitutional existence when the legislature shall have assigned it to some judicial district and provided for its proper representation in the respective branches of the legislature of the state. Until this is done, the formation of the county is incomplete, and the act for its erection is, in my opinion, entirely inoperative, so far as respects this court and circuit courts, and courts of oyer and terminer, whose respective functions and jurisdiction must be exercised in all respects precisely as if no steps had been taken by the legislature for the organization of the new county. This construction of the act in question is· due to the legislature which passed it ; is due to the proper and orderly conduct of judicial proceedings in the territory in question, and is due to the peace, welfare and best interests of the people within its limits. The motion to set aside the judgment should be granted, with costs.

WELLES, J. The judgments in all of these cases were each entered by confession, without action, under §§ 382, 383 and 384 of the code. The first two were entered and docketed in the office of the clerk of Schuyler county, and the last two in the office of the clerk of Steuben county. It is insisted in behalf of the plaintiffs in the last three causes that the judgment in the first is void, for reasons which we will proceed to consider.

It is contended, in the first place, that the act erecting the county of Schuyler does not authorize judgments in the supreme

Lanning *v.* Carpenter.

court to be entered and docketed therein until, by the provisions of that act, it shall become annexed to one of the judicial districts of the state.  Before considering this objection, it should be premised that the direct authority for entering judgments of this description in any county is not to be found elsewhere than in the three sections referred to, which constitute chapter 3 of title 12, of part 2 of the code of procedure.  The chapter referred to provides in express terms that a judgment may be entered *by confession, without action.*  The confession, which is to be the foundation of the judgment, consists of a statement in writing, signed by the defendant and verified by his oath. This statement may be filed with a county clerk or with the clerk of the superior court of the city of New York, who shall indorse upon it, and enter in the judgment book, a judgment of the supreme or superior court for the amount confessed.  It will be perceived that in entering and perfecting these judgments by confession, no judicial action of any court or officer is contemplated.  It is all accomplished by the acts of the parties, with the ministerial acts of the clerk.  When these are performed in pursuance of the statute, the law pronounces the judgment.  In the case of the judgment sought to be set aside on this motion, the confession or statement, with the judgment indorsed thereon, was filed with the clerk of Schuyler county, and the judgment entered by him in the judgment book kept in his office.  This would seem to be sufficient in regard to the office in which, and the person by whom, the judgment was entered, unless the objection of the counsel of the moving parties is a sound one, that by the act erecting the county of Schuyler, (*Sess. Laws of* 1854, *ch.* 386,) the time had not arrived when the judgment in question was entered, at which the clerk of Schuyler county would have the right to enter it.

There is no specific provision in the act, authorizing the clerk of Schuyler county to enter this or any other class of judgments at any time whatever.  But, in my judgment, there are in the statute last referred to, provisions as ample and effective to the object in view, as if the authority was contained in express terms, and which confer upon the clerk of Schuyler county pre-

cisely the same powers, in this respect, as those possessed by any other county clerk in the state. Section 6 of that act declares that the territory therein described shall, from and after the passage of the act, be, for all purposes, except for the election of members of the legislature, and justices of the supreme court, and for the holding and jurisdiction of supreme and circuit courts and courts of oyer and terminer, until after the then next state census and enumeration, and thereafter for all purposes whatever, a separate and distinct county, &c. ; and the freeholders and inhabitants of the county of Schuyler, for all purposes, (except as aforesaid,) shall have and enjoy all and every the same rights, powers and privileges as the freeholders and inhabitants of any of the counties of this state are by law entitled to have and enjoy, and not subject to be assessed and taxed by any of the counties from which they are by the same act taken. Sections 9, 10 and 11 provide for transcribing such of the books, records and papers of the counties of Chemung, Steuben and Tompkins, (from which the new county was taken,) as concern the county of Schuyler and the real property therein, including dockets of judgments, which are to be deposited in the clerk's office of the county of Schuyler. Section 12 declares that all county officers for the county of Schuyler, who are authorized by law to be elected, shall be elected at the then next general election, (1854,) and the officers elected thereat shall hold their offices respectively for the term as now provided by law for the office to which they are elected, estimating the time from the first day of January next after their election. Among the officers authorized by law to be elected are those of county judge, sheriff and clerk. After various other provisions, necessary to a complete organization of the county, not important for the purpose of the questions now involved to be specified, we come to the 26th and last section of the act, which provides that "for all judicial purposes, so far as relates to surrogates' courts, and county courts, and courts of general sessions; and the jurisdiction and duties of county judge and surrogate, justices of the sessions, county clerks, sheriffs and coroners, and the service and enforcement of judicial process, this act shall not

take effect until the first day of January, 1855; but for all other purposes, except as hereinbefore excepted, this act shall take effect immediately."

It is entirely manifest from these provisions that the legislature intended that on and after the first day of January, 1855, the county of Schuyler should be placed upon an equal footing, and possess the same general attributes, with the other counties of the state, with the exceptions only of the election of members of the legislature and justices of the supreme court, and the holding and jurisdiction of supreme and circuit courts and courts of oyer and terminer, and after the then next state census and enumeration, for all purposes whatever. In the case of *De-Camp* v. *Eveland*, (19 *Barb.* 91,) this court held that by the words "next state census and enumeration," as used in the act erecting this county, must be intended and understood, not only the census and enumeration, but also the apportionment by the legislature of the senate, judicial and assembly districts.

I assume that at the general election in 1854, a county judge and surrogate, justices of the sessions, sheriff, clerk and coroners for the county of Schuyler were duly elected, and that they all duly entered upon the discharge of the duties of their respective offices on the first day of January, 1855, or within such time thereafter as the law prescribes. We have then, at the time the judgment in question was entered, a clerk of the county of Schuyler to receive and file this confession and enter and perfect the judgment thereon, according to the provisions of the code, which duty the papers show he discharged. These acts of the clerk are not embraced in the exception mentioned in the sixth section; no one will contend that they had any thing to do with the election of the officers mentioned in the exception; and it is equally clear to my mind that his acts in question are not included in that part of the exception which relates to the holding or jurisdiction of supreme or circuit courts or courts of oyer and terminer. As heretofore suggested, the judgment was not the result of any judicial action of any court or officer. It was not necessary that a court should be held in Schuyler county, either actually or in legal contemplation, in order to the regu-

larity or perfecting of the judgment, which was, so far as any judicial action was involved, a proceeding entirely *in pais,* and does not, as has been suggested, presuppose a trial. And as to the jurisdiction of the supreme court, it is not perceived how or in what sense it was trenched upon or interfered with. Such jurisdiction was and is co-extensive with the state; and I entertain no doubt of the constitutional power of the legislature to provide for the entry and docketing of judgments by confession or otherwise, at any place or places in the state, either in the offices of county clerks, town clerks or elsewhere, and at the same time declaring them judgments of the supreme court.

It has been supposed that judgments docketed in the counties of Tompkins, Chemung and Steuben, after January 1st, 1855, would thereby become liens upon real estate in those parts of the county of Schuyler embraced in those counties respectively at the time of the passage of the act, and that the process of this court in respect to the inhabitants of Schuyler county, must go to the sheriffs of Chemung, Steuben or Tompkins county, the same as before the passage of the act; and it is argued that to allow the docketing of judgments in Schuyler county at the same time, thereby creating liens, to be enforced through process to be executed by the sheriff of that county, would lead to conflict and confusion so great as either to show that the latter was never the intention of the legislature, or if it was, that it involves an absurdity sufficient to invalidate the provision.

Admitting the premises of this argument, I have failed entirely to perceive any force in the conclusions sought to be drawn from them. Suppose a judgment docketed in Schuyler county against an individual residing, and having real and personal property in, that county, and another judgment against the same individual docketed in Steuben county. Suppose also executions upon these judgments in the hands of the sheriffs of the counties where they were respectively entered and docketed. The execution first delivered would have the preference in respect to the personal property, and the judgment first docketed in respect to the real estate. At a former period of our judicial history, a lien was created against the real estate of a party in

every part of the state, by docketing a judgment against him in the supreme court in either of the clerk's offices of that court. At the same time, a judgment against him in the court of common pleas of any county in the state, duly docketed, was a lien upon his real estate in that county. Executions upon both judgments might be in the hands of the sheriff for collection at the same time. Alterations were from time to time made in the law at subsequent periods, respecting the liens of judgments, and among others a judgment of a court of common pleas in one county might be made a lien in another, by filing a transcript, &c. in the latter. Executions upon a judgment or judgments in the supreme court, and upon judgments in the court of common pleas of different counties, might all be in the hands of the sheriff at the same time, and also executions issued by justices of the peace against the defendant's personal property might be in the hands of constables for collection. In such or the like cases, there never was supposed to exist any necessary conflict of authority, or confusion or insuperable difficulty of proceeding; and yet, if I mistake not, there was quite as much as in the case under consideration, upon the assumption stated. In truth there is no conflict or confusion in either case. But in my judgment, the premises of the argument are not true. A judgment docketed in either of the counties from which the territory of Schuyler was taken, after the first day of January, 1855, was and is not a lien upon real estate in Schuyler, until docketed there, and can only be executed by the sheriff of Schuyler county, after being duly docketed in that county. This, it seems to me, is the plain and obvious meaning of the act, and relieves the case of all the imaginary difficulties supposed.

Upon the argument, it was urged, among other things, that the 26th section of the act erecting the county of Schuyler was in conflict with the provisions of the constitution, contained in section four of article six of that instrument, which requires judicial districts to be bounded by county lines, &c. That question is *res adjudicata* in this court; and it would be out of order to enter upon a reconsideration of it, so long as *DeCamp* v. *Eveland,* before referred to, stands unreversed, or the princi-

ples therein enunciated are not shown to be incorrect. I have never had any reason to change the views expressed in the prevailing opinion of the court in that case. The exception contained in the 26th section of the act, and in other sections where it becomes necessary for that purpose, leaves all the provisions of the constitution intact, to operate without obstruction, the same as if the act had never been passed. Whether the act, with its various provisions, exhibits wise or discreet legislation, it does not become the judiciary to inquire. It is simply a question of power in the legislature, which has been very fully and deliberately considered and settled in affirmance of the power, so far as this court is concerned.

In the second place it is contended by the counsel for the moving parties that the judgment in the first cause is void, as to junior judgment creditors, for the reason that the statement embraced in the confession is not in conformity with the requirements of the code. Those requirements are as follows: 1. It must state the amount for which judgment may be entered, and authorize the entry of judgment therefor. 2. If it be for money due or to become due, it must state concisely the facts out of which it arose, and must show that the sum confessed therefor is justly due or to become due. 3. If it be for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting the liability, and must show that the sum confessed therefor does not exceed the same. (*Code,* § 383.)

There is no question raised in respect to the first or third subdivision of the section. The objections made relate to the second subdivision, and are that the statement does not show that the sum confessed is justly due or to become due, and does not contain a sufficient specification of facts out of which the indebtedness arose. It is not stated that the sum confessed is justly due, nor is it necessary, as I think, that it should be so *stated.* Facts must be stated from which the justice of the amount confessed will appear. That, it seems to me, has been done in this case. I shall forbear going through with a critical analysis and examination of the statement, or the objections to

Lanning *v.* Carpenter.

it. No one can fail at once, upon reading it, to conclude, if the statement be true, that the amount confessed was justly due. The verification by the defendant is all the evidence of its truth required by the code. It cannot be necessary to negative imaginary facts, which, if they existed, would invalidate the judgment. The confession must contain a concise statement, showing the facts out of which the indebtedness arose, and must show the amount justly due; that is, it must appear from such statement that the sum confessed is justly due. The statement should receive a fair and liberal interpretation. If it presents a *prima facie* case, free from ambiguity in material points, of indebtedness to the amount confessed, and presents the facts of the case in such form as to be easily comprehended by a person of common understanding, it is all, as it seems to me, that the law requires in this respect.

The statement in question shows that the defendant was indebted to the plaintiff on two several notes given by the former for borrowed money, specifying the dates and amounts of each, showing that they were due when given, and that they were both held and owned by the plaintiff; and a further indebtedness by the defendant to the plaintiff for the assumption, by the latter for the former, of the amount of another note made by him which was then past due, held and owned by the Bank of Havana, by which assumption the latter note was paid and taken up, and giving in like manner the amount, date, and parties of the last mentioned note. A short calculation will show that the amount due on these three notes was fully equal to that of the judgment at the time it was confessed. It seems to me to be a waste of words to argue in favor of the sufficiency of this statement, which to my mind is palpable on its face.

The motion should be denied, with ten dollars costs, to be paid by the parties making the motion.

Motion to set aside the judgment and subsequent proceedings granted, with $10 costs.

[MONROE GENERAL TERM, December 1, 1856. *T. R. Strong, Welles* and *Smith,* Justices.]