(50 App. Div. 482.)

### WITTMER v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

**1. MUNICIPAL CORPORATIONS—OFFICERS—ABOLISHING OFFICE.**

Laws 1871, c. 461, provides that the common council of Long Island City, on the nomination of the mayor, shall appoint a city clerk, and other necessary officers of the board. Section 4 declares that a majority of the common council shall be a quorum for the transaction of business. Laws 1879, c. 100, § 14, requires a vote of five-sevenths of all members of the board to pass any ordinance, resolution, or act involving the expenditure of money. The office of plaintiff's assignor as deputy city clerk was abolished by resolution of February 10, 1897, attached to the tax budget of that year, which did not receive the votes of five-sevenths of all members of the city council. *Held*, that though the resolution was attached to the tax budget,—a matter involving an expenditure of money,—yet it was separable therefrom, and could be passed by a majority vote of the council, and hence the office was abolished.

**2. SAME—APPOINTMENT OF OFFICERS—GRATUITOUS SERVICES.**

Laws 1871, c. 461, provides that the common council of Long Island City, on the nomination of the mayor, shall appoint a city clerk, and other necessary officers of the board. The office of deputy city clerk was abolished by resolution of council, and the officer continued to perform the duties of the office, and his claim for services was allowed by the auditing board. *Held*, that as such clerk was not appointed in the manner required by the statute, after the office was abolished, the city was not liable for his services.

3. SAME—ASSIGNMENT—NOTICE.

Laws 1871, c. 461, provides that the common council of Long Island City, on the nomination of the mayor, shall appoint a city clerk, and other necessary officers of the board. The office of deputy city clerk was abolished by a resolution of the council. The officer continued to perform the duties of the office after its abolishment, and his claims for services were audited and allowed, and he assigned them to the plaintiff. *Held*, that plaintiff was bound to take notice of the fact that the council had no power to audit such claim after the abolition of the office, and there could be no recovery.

Appeal from trial term, Queens county.

Action by Frank Wittmer against the city of New York for services rendered by plaintiff's assignor as deputy city clerk of Long Island City. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

William J. Carr, for appellant.

Louis E. Salmon, for respondent.

HATCH, J. The facts presented in this case are without dispute, and the question to be determined is one of law. The plaintiff's assignor on or about April 20, 1896, was appointed deputy city clerk of Long Island City, at a salary of $800 per annum, and entered upon the performance of his duties. He continued therein until February 10, 1897, when, by resolution of the common council of the city, such position was abolished. This resolution was attached to the tax budget for that year, and while it does not appear, in terms, that the resolution was approved by the mayor, yet the case was tried upon the theory that it was so approved and became binding upon plaintiff's assignor; assuming that it received a sufficient number of votes in the council, as required by the charter. No other question affecting the validity of the resolution was presented to the court upon the trial, nor was any other question urged on the argument, by either counsel, upon this appeal.

By chapter 461, subc. 1, tit. 3, § 2, Laws 1871, the common council, "upon the nomination of the mayor, shall appoint a city clerk at an annual salary of nine hundred dollars, and other necessary officers of the board." By section 4 it is provided, "A majority of the common council shall be a quorum for the transaction of business." It seems to have been under the first section above quoted that the council assumed to appoint plaintiff's assignor to the position of deputy clerk. The charter further provides, by section 10, that any resolution or ordinance involving the expenditure of money must receive at least a two-thirds vote. Chapter 100 of the Laws of 1879 (section 14) provides, "It shall require a vote of five-sevenths of all the members elected to said board to pass any ordinance, resolution or other legislative act, involving the expenditure of money." It is the claim of the defendant, based upon these provisions of the charter, and other provisions of the act of 1879, to be hereafter noticed, that the office of plaintiff's assignor was abolished upon the 10th day of February, 1897, and that thereafter he ceased to be in the employ of the city in any capacity, and that the continued rendition

of services by him (he not having been appointed by any formal res-
olution or ordinance after such abolition) could not create a liability
against the city, founded upon either a legal or an equitable consid-
eration. It is claimed on behalf of the respondent that the resolu-
tion of February 10, 1897, was not legally adopted, for the reason
that it did not receive five-sevenths of the votes of all the members
constituting the common council; that in any event it was within
the power of the common council, under section 2 of the charter,
above quoted, to appoint all necessary officers; and that, assuming
that the office was abolished by the resolution, it was still compe-
tent for the common council to accept the service of the plaintiff's
assignor, and entitle him to receive pay therefor. It appears that
there was never any resolution or ordinance adopted by the com-
mon council appointing the plaintiff's assignor to this office after the
passage of the resolution of February 10th. Therefore his authority
to act in such position, and to receive compensation, is to be implied
from the attitude of the council to him, and the services which he
rendered.

It may be conceded, so far as the resolution adopting the tax
budget on February 10, 1897, is concerned, that, as it involved an
expenditure of money, it required the votes of five-sevenths of all
the members, and, failing to receive such votes, it was not legally
adopted. Such concession, however, does not aid the plaintiff.
There is no provision in the charter which requires the votes of five-
sevenths of all the members elected, to abolish this position. On
the contrary, as there is no provision in the charter requiring more
than a majority vote to adopt a resolution abolishing this office, it
follows that section 4 of chapter 461, above quoted, applies; and, as
such section confers authority upon a majority to transact business,
so that majority may perform any act, unless the charter prescribes
a different vote or a different method. In respect to this question,
no limitation appears to be placed upon the authority of the council
to pass the resolution by a majority vote. It is quite true that the
resolution appears in connection with the appropriation of money;
but the resolution abolishing the position is clearly severable from
that providing for the expenditure of the public funds. Even though
that part of the resolution which affects the latter question was not
legally adopted, yet, so far as it affected the status of plaintiff's as-
signor, it was clearly legal, and could be adopted by the vote of a
majority of the members. This vote the resolution received, and is
therefore to be regarded as effective in abolishing the position. As
it appears that there was never thereafter any formal resolution or
ordinance appointing plaintiff's assignor to any position in the serv-
ice of the city, the plaintiff is relegated to his contention that by
the rendition of the service by plaintiff's assignor, and the accept-
ance thereof by the city, a legal obligation to pay therefor was creat-
ed. This was the view taken by the court below. We think it may
not be sustained. While it is well settled that a corporation may
be bound upon implied contracts made by its agents, to be gathered
from corporate acts, even though without the vote of the governing
body, yet such obligation can only be created when the charter or

law governing the corporate acts does not require that the obligation should be created in a particular way. Kramrath v. City of Albany, 127 N. Y. 575, 28 N. E. 400. The express provision of the charter is that the person filling the position occupied by plaintiff's assignor must have been appointed thereto. A strict grammatical construction of section 2, tit. 3, c. 461, Laws 1871, would seem to require that a person, to fill a position in connection with the board, must be nominated by the mayor, before the common council is authorized to appoint. It is also susceptible of the construction that, as the person appointed is to perform duties in connection with the proceedings of the board, as to such position the matter was left in the hands of the council, and does not require a nomination by the mayor. But in either event the person must be appointed by act of the council. Here there has never been any appointment, either by the council or any one else. On the contrary, the appointment under which the plaintiff's assignor held his position was abolished; and the common council thereafter intentionally refrained from making any appointment to this position, or providing in the tax levy for the raising of money therefor. The charter thus providing for an appointment, and none having ever been made by the council, plaintiff's assignor could create no liability by any voluntary service which he chose to render; and of the limitation upon the council he was bound to take notice. By the express provision of section 1, c. 100, Laws 1879, no head of a department was authorized to exceed the amount appropriated therefor, without the consent of all the members of the common council, and such heads of department were restrained from making expenditure or incurring liability in any one year in excess of the appropriation for such department for that year. By section 2 the common council was required, at least 90 days prior to the time prescribed by law for the election or appointment of any city officer, to fix by ordinance the salary for the term. By section 3 the common council was required to levy, in addition to the amount required for the general tax, such sum as should be necessary to pay the salaries of all the city officers in said city. There having been no appointment to this position, and no appropriation made in pursuance of the foregoing sections, no condition existed by which any compensation could be recovered, as no compensation was attached by law to such position, and the incumbent was limited in recovery to the compensation provided by law. Haswell v. Mayor, etc., 81 N. Y. 255. Where no provision is made by law for such service, it is deemed to be gratuitous. Gibson v. Roach, 2 App. Div. 86, 37 N. Y. Supp. 567. See People v. Jackson, 85 N. Y. 541; Fitzsimmons v. City of Brooklyn, 102 N. Y. 536, 7 N. E. 787. The powers and duties conferred by the charter (section 13, c. 461, Laws 1871) upon the common council to audit bills against the city are the same as those possessed by a board of town auditors of a town. The authority is only to audit such bills as constitute legal liabilities of the town. In re Town of Hempstead, 36 App. Div. 321, 55 N. Y. Supp. 345, affirmed in 160 N. Y. 685, 55 N. E. 1101. The audit of an illegal bill is void. Board v. Ellis, 59 N. Y. 620; People v. Lawrence, 6 Hill, 244. This result is not saved by procuring the consent of all the

members of the common council, as provided in section 1, c. 100, Laws 1879. Such authority refers alone to the expenditure of money for a claim or demand authorized by law, and existing as a legal obligation. The payment of specific sums to plaintiff's assignor upon the audit of the common council prior to the refusal to pay the present bill cannot change the situation. No number of illegal acts can make valid an additional illegal act. As there was no basis for the auditing of this bill, and as it does not constitute a legal liability against the municipality, the judgment based thereon is wrong. It should therefore be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur; GOODRICH, P. J., in result.